**VERTICAL BROADCASTING, INC., and Eric Ferrara, Plaintiffs,**

v.

**The TOWN OF SOUTHAMPTON, and Vincent Cannuscio, Town Supervisor, Martha M. Rogers, Patrick Heaney, Steven S. Halsey and James P. Drew, Constituting the Town Board of the Town of Southampton, County of Suffolk, State of New York, The Town Clerk of the Town of Southampton, and Vincent Cannuscio and Steven S. Halsey, Individually, Defendants.**

**No. CV 99–4224.**

United States District Court,
E.D. New York.

Feb. 22, 2000.

Vincent J. Trimarco, by David N. Altman, Smithtown, NY, for Plaintiffs.

Miller & Skubik, by Richard Miller, Islandia, NY, for Plaintiffs.

Snyder & Snyder, by David L. Snyder, Tarrytown, NY, for Plaintiffs.

Ahmuty, Demers & McManus, by Neil H. Angel, Albertson, NY, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a case brought pursuant to the Telecommunications Act of 1996 (the "TCA") and various civil rights statutes, including, 42 U.S.C. §§ 1981, 1982, 1983 and 1985. Plaintiffs seek the right to construct a communications tower (the "Tower") in the Town of Southampton (the "Town"), as well as damages resulting from the Town's refusal to allow the proposed construction. Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988. Presently before the court is defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint in its entirety for failure to state a claim. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

### I. *Factual Background*

The facts alleged in support of plaintiffs' claims as set forth in the complaint, and accepted as true for the purposes of this motion, are as follows.

### A. *The Parties*

Plaintiffs are Vertical Broadcasting, Inc. ("VBI") and Eric Ferrara ("Ferrara"). VBI is a New York corporation and Ferrara is VBI's president. Defendants are the Town, the Town Supervisor, Vincent Cannuscio ("Cannuscio"), and Town Board members Martha M. Rogers ("Rogers"), Patrick Heaney ("Heaney"), Steven S. Halsey ("Halsey") and James P. Drew ("Drew") (collectively the "Town Board"). Each of the aforementioned individual defendants are named in their official capacities. Additionally, Plaintiffs name Cannuscio and Halsey in their individual capacities.

### B. *The Subject Property and Plaintiffs' Lease*

The property upon which plaintiffs seek to construct the Tower (the "Property"), is an approximate 50 acre parcel located on the north side of an unimproved portion of Middle Line Highway in the Town. The Property is located within a zone CR–200, which is a five acre residential zoning district. Sand Land Corporation ("Sand Land"), the owner of the Property, operates a sand mine on the property. To the northwest of the property is a 500 acre tract of land formerly occupied by Bridgehampton Raceway. Three communications towers exist within a three mile radius of the Property. These towers are owned and operated by AT & T, Cablevision and radio station, WLNG.

In May of 1991, Sand Land leased the Property to VBI for a ninety-nine year

period. The lease was made contingent upon VBI's ability to obtain approval from the Town to erect the Tower on the Property.

### C. Plaintiffs' Efforts to Obtain a Zoning Change and the Town's Denial

#### i. The Special Exception Application

In June of 1991, VBI submitted an application to the Town seeking "special exception" approval to construct a 360 foot communications tower as a public utility structure.[1] At the time the application was made, the Town Code permitted the construction of public utility structures on residentially zoned properties pursuant to such special exception approval by the Town Board. In February of 1992. The Town Planning Board and Building Department stopped processing VBI's special exception application because of the Building Department's insistence that VBI obtain an interpretation from the Town Zoning Board of Appeals, as to whether the Tower was properly considered a public utility structure.

#### ii. The QPSUD Application

In December of 1992, the Town Board amended the Town Code and changed the required approval process for a tower such as that sought to be erected by VBI from a special exception process, to require an application for a change of zoning to a zone labeled as a Quasi Public Service Use District ("QPSUD").

In March of 1993, VBI submitted an application to change the zone of the Property from its CR–200 zoning classification to a QPSUD zoning district. Two months later, the Town Planning Board issued a written report as required under the QPSUD ordinance. Thereafter, in July of 1993, a public hearing on VBI's QPSUD application was held.

#### iii. The SEQRA Declaration

One month after the hearing on VBI's QPSUD application, the Town Board issued declarations under the New York State Environmental Quality Review Act ("SEQRA"), requiring VBI to submit an environmental impact statement to the Town in connection with the construction of the Tower. Plaintiffs allege that at some point after issuance of this positive SEQRA declaration, then Town Supervisor, Fred Thiele, wrote a letter demonstrating the Town Board's intent to obstruct and oppose plaintiff's application for a QPSUD change of zoning.

In 1994 and 1995, VBI submitted both a Draft Environmental Impact Statement ("DEIS") and a Supplemental DEIS to the Town. In April of 1996, the Town adopted a resolution declaring these documents to be ready for public comment. Public hearings were thereafter held in May, June and July of 1996. The Town Board then extended the period of public comment through August 26, 1996. In November of 1996, VBI submitted written responses to the public comments on the DEIS and the Supplemental DEIS.

In January of 1997, the Town Board resolved to accept VBI's DEIS, Supplemental DEIS, the public comments thereto and the Final Environmental Impact Statement ("FEIS") of VBI. The Town further resolved to accept public comments to the FEIS until January 28, 1997. Three months later, in March of 1997, when the Town had taken no action on VBI's application, plaintiffs demanded that the Town Board render a decision on VBI's application for its QPSUD change of zoning application. In support of its demand, plaintiffs relied upon New York law requiring action on a SEQRA decision

---

**1.** Plaintiffs' complaint states that the first effort to obtain approval from the Town Board was made in June of 1990. Because plaintiff did not lease the property until May of 1991, the court assumes that the initial application was made in June of 1991. Assuming, however, that the application was indeed, made in 1990, that fact in no way effects the outcome of the present motion.

within thirty days of the filing of a FEIS and the Town zoning ordinance requiring approval or rejection of the establishment of a QPSUD application within sixty days of the close of public comment thereon.

In December of 1997, the Town Board resolved to re-open public comment on plaintiffs' application. This decision was based upon an alleged error made by the Town in preparing a notice regarding the FEIS. During this final period of public comment, December 9 through December 30, 1997, the Town received no further public comment regarding VBI's QPSUD zoning application.

### iv. *The Denial of the Change of Zoning*

On January 7, 1998, VBI commenced a proceeding in New York State court, pursuant to Article 78 of the CPLR, to compel the Town to take action on the SEQRA declaration. The next day, the Town Board adopted a joint QPSUD/SEQRA resolution denying VBI's change of zoning application.

The denial of VBI's application is set forth in a twenty-four page resolution of the Town Board. That resolution details the events and hearings preceding the resolution and discusses, *inter alia*, the Tower's impact on health, bird migration, aesthetics and real property values. The resolution also discusses available alternatives to the Tower. Ultimately, the resolution concludes that the change of zoning application should be denied to avoid adverse environmental effects of the Tower on property values, the aesthetic values of the community and the character of the residentially zoned areas around the site of the Tower.

### II. *The Criminal Prosecution and Acquittal of Eric Ferrara*

In January of 1997, in the midst of the foregoing proceedings, plaintiff Ferrara was arrested and indicted in connection with certain activities related to Ferrara's application before the Town Board. Pursuant to an investigation of the United States Attorney's office for the Eastern District of New York, Ferrara was charged with offering bribes, in violation of 18 U.S.C. § 666, to Cannuscio and Halsey in exchange for favorable votes in connection with VBI's then-pending application. Ferrara was tried before a jury and acquitted of all charges on December 7, 1998.

### III. *Plaintiffs' Complaint*

As noted above, plaintiffs' complaint seeks an injunction requiring issuance of whatever permit is necessary to allow construction of the Tower. Damages and attorneys fees are sought as well. In support of plaintiffs' claims, it is alleged that the actions of defendants were "outrageously arbitrary, capricious, irrational and discriminatory" in violation of plaintiffs' substantive and procedural due process and equal protection rights under the Federal and New York State Constitutions. Plaintiffs further claim that they were unconstitutionally deprived of rights guaranteed to them by the TCA, the Supremacy Clause and the Commerce Clause of the United States Constitution. These claims are alleged to form the basis of plaintiffs' claims against the Town and the Town Board pursuant to 42 U.S.C. §§ 1981, 1982, 1983 and 1985.

Plaintiffs' claims against Cannuscio and Halsey arise from the alleged bribery that resulted in Ferrara's prosecution. Specifically, it is alleged that these two defendants extorted money from Ferrara in exchange for a favorable vote on VBI's application. Cannuscio and Halsey are alleged to have made false representations that triggered the investigation of Ferrara, his subsequent indictment and trial. Such actions are alleged to have violated Ferrara's rights under the due process and equal protection clauses of the Constitution. Plaintiffs also claim civil rights violations arising from the Town's passage of the QPSUD ordinance and alleged disparate treatment of VBI in comparison to

the treatment of all others seeking to erect communications towers in the Town.

In addition to civil rights claims, plaintiffs allege that defendants have violated the TCA. Specifically, plaintiffs seek to impose liability pursuant to section 101 of the TCA, which forbids local governments from prohibiting the ability of any entity to provide interstate or intrastate telecommunications services.

## IV. *Defendants' Motion*

Defendants seek dismissal of the entire complaint for failure to state a claim upon which relief may be granted. First, defendants seek dismissal of any claim brought pursuant to the TCA on statute of limitations grounds. Specifically, defendants reject plaintiffs' characterization of their complaint as brought pursuant to section 101 of the TCA, codified at 47 U.S.C. § 253 and referred to herein as "Section 253." Defendants argue that any claim pursuant to the TCA is properly brought only pursuant to section 704 of the TCA, codified at 47 U.S.C. § 332 and referred to herein as "Section 332." Section 332 is argued to apply to the claims here because it references and regulates, to a certain extent, local zoning decisions made in connection with the siting of communications towers. *See* 47 U.S.C. § 332. Defendants seek dismissal of any Section 332 claim on the ground that any such claim is barred by that section's thirty day statute of limitations. It is also argued, in the alternative, that to the extent that any Section 332 claim is timely, defendants have complied fully with that section of the TCA.

Defendants seek dismissal of plaintiffs' civil rights claims pursuant to 42 U.S.C. §§ 1981, 1982 and 1985 and the equal protection claim under 42 U.S.C. § 1983 ("Section 1983") on the ground that plaintiffs have not alleged the required racial or class-based discrimination. Dismissal of plaintiffs' Section 1983 substantive and procedural due process claims are sought on the ground that plaintiffs cannot show

the required "entitlement" to the zoning change sought.

Defendants' motion further argues that the Town's enaction of the QPSUD ordinance had the required rational basis and, moreover, that passage of the ordinance constitutes a legislative act for which the Town Board is entitled to absolute legislative immunity. Defendants seek dismissal of the complaint as against Town Board members Rogers, Heaney and Drew. on the ground that plaintiffs' action against these defendants is in their "official capacities" only and should therefore be dismissed as redundant. Finally, defendants seek dismissal of the complaint as against defendants Cannuscio and Halsey on the ground of qualified immunity.

Before deciding the merits of the motion, the court turns to a discussion of the applicable law.

## DISCUSSION

### I. *Standard For Motions To Dismiss*

A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). When ruling on a motion to dismiss, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 62 (2d Cir.1997).

When considering a motion to dismiss for failure to state a claim, the court considers the facts as set forth in the complaint, documents attached thereto and incorporated by reference therein. *Automated Salvage Transp., Inc. v. Wheelabrator Envl. Systems, Inc.,* 155 F.3d 59, 67 (2d Cir.1998). Additionally, the court may consider matters of public record, such as case law and statutes. *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75

(2d Cir.1998); *Magee v. Nassau County Medical Center,* 27 F.Supp.2d 154, 160 (E.D.N.Y.1998). If the court intends to consider other documents, the court must give notice to the parties that the motion will be considered a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and afford the parties the opportunity to submit additional material. FRCP 12(c); *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *Staveley v. St. Charles Hospital,* 173 F.R.D. 49, 51 (E.D.N.Y.1997).

## II. *The Telecommunications Act of 1996*

The TCA was enacted to "provide a pro-competitive, deregulatory national policy framework designed to accelerate rapidly private sector development of advanced telecommunications and information technologies and services ... by opening all telecommunications markets to competition" .... *Cellular Telephone Company v. Town of Oyster Bay,* 166 F.3d 490, 492–93 (2d Cir.1999), quoting, H.R. Conf. Rep. No. 104–458, at 206 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 124.

### A. *Section 332*

#### i. *General Principles*

In recognition of the fact that the expanding telecommunications industry often requires construction of communications towers and that local governments are called upon to determine whether such structures may be built, Congress enacted Section 332 to regulate, in part, this procedure.[2] Section 332 seeks to strike a balance between encouraging the growth of telecommunications systems and the rights of local governments to make land use decisions.

Specifically, Section 332, entitled "Preservation of local zoning authority," provides that nothing in the TCA shall "limit or affect the authority of a State or local government ... over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). "Personal wireless facilities" are defined broadly in Section 332 to encompass commercial mobile services, unlicensed wireless services and common carrier wireless exchange access services. 47 U.S.C. § 332(c)(7)(C)(i).

Although Section 332 preserves local authority over land use decisions, it also prohibits certain local action. Local governments regulating the "placement, construction, and modification" of wireless services facilities are expressly prohibited from: (1) unreasonably discriminating among providers of functionally equivalent services and (2) prohibiting or having the effect of prohibiting the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(i)(I) and (II).

State and local governments are required, under the TCA, to act on any request for authorization to construct personal wireless service facilities within a "reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii). The statute further requires that decisions denying such requests be in writing and supported by substantial evidence on the record. 47 U.S.C. § 332(c)(7)(B)(iii).

Section 332 expressly provides for judicial review of any local decision denying a request to "place, construct or modify," wireless service facilities. Specifically, any person adversely affected by State or local decisions inconsistent with the requirements of Section 332 may commence an action to review that decision. The statute allows for prompt judicial action stating that the adversely affected party, "may, within 30 days" after the local decision, commence an action in any court of competent jurisdiction. 47 U.S.C. § 332(c)(7)(B)(v). Such actions are to be heard and decided on an "expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

**2.** When the court makes reference herein to "Section 332" the court is referring to 47 U.S.C. § 332(c)(7) which is the codification of section 704 of the TCA.

### ii. *The Section 332 Claim is Time–Barred*

■ Seizing upon the thirty day language in Section 332, defendants argue, and plaintiffs do not deny, that to the extent that this is an action brought pursuant to Section 332, it must be dismissed as untimely. Clearly, this action, commenced in 1999, was not commenced within thirty days of the January 1998 decision of the Town Board denying plaintiffs' application. Thus, to the extent that the thirty day period is a statute of limitations, any claim pursuant to Section 332 must be dismissed as untimely.

The court notes that it was initially reluctant to construe the thirty day period in Section 332 as a statute of limitations. It appeared to the court that while an aggrieved party would likely wish to commence an action as soon as possible, it made little sense to preclude such an action after such a short period of time. The thirty day period, apparently an accommodation made in favor of the party wishing to construct a wireless facility, ought not be used to against that party. This interpretation of the statute, however, was not argued by plaintiffs and found no clear support in the legislative history of the TCA. Additionally, the plain language of the statute as well as dicta from other courts counseled against interpreting the thirty day period in any way other than as a statute of limitations.

Specifically, Section 332 states clearly that an action challenging a local siting decision may be brought "within" thirty days. To construe the statute to allow actions to be brought after thirty days would render meaningless the use of the word "within." Had Congress intended for the thirty days to constitute a waiting period only and to allow a party a longer period of time in which to bring an action, it could have easily have so stated. It did not.

Additionally, although the Second Circuit has not ruled squarely on this issue, holdings from district courts support the view that the thirty day period is a statute of limitations. *See Bellsouth Mobility, Inc. v. Parish of Plaquemines,* 40 F.Supp.2d 372, 377 (E.D.La.1999) (finding untimely claims brought in excess of thirty days from local action revoking a permit); *Cellco Partnership v. Town Plan and Zoning Commission of Farmington,* 3 F.Supp.2d 178, 186 (D.Conn.1998) (claims under Section 332 must be commenced within thirty days of an adverse decision); *see also OPM–USA–Inc. v. Board of County Commissioners of Brevard County,* 7 F.Supp.2d 1316, 1323 (M.D.Fla.1997) (referring to an action brought within the thirty day period as "timely commenced").

In view of the foregoing, the court holds that to the extent that plaintiffs claims are stated pursuant to Section 332, those claims must be dismissed as untimely.

### B. *Section 253*

### i. *General Principles*

In probable recognition of the fact that it is too late to commence an action under Section 332, plaintiffs argue that their lawsuit is brought only pursuant to Section 253 of the TCA.[3] Since this section contains no thirty day provision, plaintiffs claim that their TCA action has been timely commenced. Merely invoking Section 253, however, does not necessarily allow a lawsuit involving a local siting decision to be commenced outside of the thirty day period of Section 332. Plaintiffs must show not only that there is a private right of action under Section 253, but also that their action is one that is properly brought pursuant to that section.

Section 253 is entitled "Removal of barriers to entry" and provides that no state or local statute or regulation may "prohibit or have the effect of prohibiting the ability of any entity to provide interstate or intra-

---

**3.** When the court makes reference herein to "Section 253," the court is referring to 47 U.S.C. § 253, which is the codification of section 101 of the TCA.

state telecommunications service." 47 U.S.C. § 253(a). Subsections (b) and (c) recognize certain "safe harbor" rights of State and local governments. *See Sprint Spectrum L.P. v. Mills,* 65 F.Supp.2d 148, 159 (S.D.N.Y.1999).

Specifically, subsection (b) of Section 253 recognizes the States' authority to impose requirements necessary to preserve service, protect the public safety and welfare and ensure the quality of telecommunications services and the rights of consumers. Any local action taken in furtherance of such goals must be undertaken "on a competitively neutral basis." 47 U.S.C. § 253(b). Similarly, subsection (c) of Section 253 guarantees States and local governments the right to manage their public rights of way and to collect reasonable compensation from telecommunications providers for use of public rights of way. *See GST Tucson Lightwave, Inc. v. City of Tucson,* 950 F.Supp. 968, 970 (D.Ariz. 1996), *appeal dismissed as moot,* 134 F.3d 377 (9th Cir.1998). Any such action that is undertaken, and any compensation required, however, must be on a competitively neutral and nondiscriminatory basis. 47 U.S.C. § 253(c).

Courts are in disagreement as to whether there exists an implied private right of action under Section 253. *See Omnipoint Communications, Inc. v. The Port Authority of New York and New Jersey,* 1999 WL 494120 *6 n. 5 (S.D.N.Y. July 13, 1999); *compare GST Tucson Lightwave, Inc. v. City of Tucson,* 950 F.Supp. 968 (D.Ariz. 1996) (declining to find an implied right of action) *with TCG Detroit v. City of Dearborn,* 977 F.Supp. 836 (E.D.Mich.1997) (holding that there exists an implied private right of action).

ii. *Plaintiffs Have Not Stated a Cause of Action Under Section 253*

■ Despite plaintiffs' attempts to state a claim under Section 253, the court holds that the only TCA section applicable to the facts herein is Section 332. Plaintiffs seek to erect a communications tower in the

Town. While the TCA has been described as far from a "model of clarity," *see Sprint Spectrum, L.P. v. Willoth,* 176 F.3d 630, 641 (2d Cir.1999), quoting, *AT&T Corp. v. Iowa Utils. Bd.,* 525 U.S. 366, 119 S.Ct. 721, 738, 142 L.Ed.2d 835 (1999), one thing is clear. The type of conduct of which plaintiffs complain falls squarely within the confines of Section 332.

Section 332 speaks specifically to local decisions regarding the siting of communications towers and of the judicial recourse available to those who feel that a local body has acted outside of the strictures of the TCA. The statute provides a detailed roadmap of the judicial review applicable to siting decisions. That section provides for a thirty day limitations period. To allow a plaintiff to pursue untimely judicial review of a siting decision by relying on Section 253 would effectively nullify the limitations period of Section 332. To the extent that plaintiffs have any claim at all, it is a claim under Section 332—not Section 253.

The court notes that it is aware of at least one case where the denial of a siting request has been held to violate both Sections 332 and 253 of the TCA. *See Sprint Spectrum L.P. v. Mills,* 65 F.Supp.2d 148, 159 (S.D.N.Y.1999). In that case, however, the site proposed by the provider was described as a site that was "essential" to providing seamless service and the court held that the denial of the request effectively prohibited the provision of service in violation of Section 253(a). No allegation regarding a prohibition on providing service is made here. Instead, there is only the allegation that plaintiffs are being deprived of the right to provide service from a particular location—a complaint that is clearly subject to redress only under Section 332.

The court further notes that the more typical case brought under Section 253 is one in which a provider complains that it is being assessed a license or franchise fee that is neither competitively neutral nor

nondiscriminatory. *E.g., GST Tucson Lightwave, Inc.*, 950 F.Supp. at 969. Here, the issue is solely one of tower location, not the assessment of any alleged discriminatory fee.

In light of the foregoing, it is unnecessary to decide the private right of action question. For even if a private right of action is assumed to exist, this is not a case properly arising under Section 253. Accordingly, the court dismisses any action brought pursuant to Section 253 of the TCA. Having dismissed all of plaintiffs' TCA claims, the court turns to consider the viability of plaintiffs' civil rights claims.

### III. *Civil Rights Claims*

#### A. *Section 1981*

■ To establish a claim under 42 U.S.C. § 1981 ("Section 1981"), plaintiff must allege: (1) membership in a member of a racial minority; (2) an intent to discriminate against plaintiff on the basis of race and, (3) that the discrimination is aimed at an activity covered by Section 1981. *Mian v. Donaldson, Lufkin, & Jenrette*, 7 F.3d 1085, 1087 (2d Cir.1993); *Farrell v. Child Welfare Administration*, 1999 WL 1210916 *2 (E.D.N.Y. December 15, 1999). Thus, to state a claim pursuant to Section 1981, a plaintiff must allege that he is a member of a racial or ethnic minority. *Sherlock v. Montefiore Medical Center*, 84 F.3d 522, 527 (2d Cir.1996). Plaintiff must allege facts "sufficient to show a plausible inference that the defendant purposefully and intentionally discriminated against him because of his race." *Chadha v. Connecticut Medical Examining Board*, 1999 WL 1067805 *3 (D.Conn. October 29, 1999).

Plaintiffs claim repeatedly that defendants' actions were outrageous, arbitrary and capricious. However, even in response to defendants' motion to dismiss, there are no allegations of racial or other class-based discrimination, sufficient to state a Section 1981 claim. Under these circumstances, the court dismisses all claims brought pursuant to Section 1981 as frivolous.

#### B. *Section 1982*

■ Like claims brought pursuant to Section 1981, claims brought pursuant to 42 U.S.C. § 1982 ("Section 1982") must allege an element of racial animus or discrimination. *See Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 616–17, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987); *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir.1991). For the same reasons that the court dismissed the Section 1981 claims, the court dismisses all claims brought pursuant to Section 1982 as frivolous.

#### C. *Section 1985 Conspiracy Claim*

■■ Liability for conspiracy to violate the civil rights laws is established by 42 U.S.C. § 1985 ("Section 1985"). Section 1985 applies to conspiracies of private individuals as well as state actors. *See Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir. 1988). The statute creates no substantive rights but, instead, provides a remedy for the deprivation of rights guaranteed by the United States Constitution. *Great Am. Fed. Sav. & Loan v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Traggis*, 851 F.2d at 586–87.

■ The elements of a claim under Section 1985 are:(1) a conspiracy; (2) motivated by racial or other discriminatory animus; (3) for the purpose of depriving any person or a class of persons of the equal protection of the laws or of equal privileges and immunities under the law; (4) an overt act in furtherance of the conspiracy and (5) injury. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir.1994); *Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir.1989); *Mele v. Christopher*, 7 F.Supp.2d 419, 421 (S.D.N.Y.1998), *aff'd*, 173 F.3d 845 (2d Cir.1999); *Sacco v. Pataki*, 982 F.Supp. 231, 246 (S.D.N.Y. 1997). Conspiracy claims under Section

1985 must contain specific factual allegations. A complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss. *Leon v. Murphy*, 988 F.2d 303, 311(2d Cir.1993).

The "class" that is the subject of the allegedly "invidious discrimination," required to be pled in a Section 1985 case cannot be defined merely as the class of alleged victims. *Mele v. Christopher*, 7 F.Supp.2d 419, 421–22 (S.D.N.Y.1998). Instead, the discriminatory animus referred to must be based upon racial or other class-based motive. In *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), the Supreme Court characterized the phrase "or otherwise class-based invidiously discriminatory animus" as a "speculative" extension, beyond race, of the class of individuals intended to be protected by Section 1985. *Bray*, 506 U.S. at 269, 113 S.Ct. 753.

Here, plaintiffs allege nothing more in support of their Section 1985 claim than the allegation that plaintiffs' were the subject of discrimination. Ferrara nowhere alleges membership in a "class" that has been subject to discrimination. In view of the restrictive interpretation afforded Section 1985 by the Supreme Court, and plaintiffs' failure to allege membership in any particular class, the court holds that Ferrara has not sufficiently alleged a cause of action pursuant to Section 1985. Accordingly, the court dismisses all claims brought pursuant to Section 1985.

### D. *Section 1983*

To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), plaintiff must show a deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993). The state action requirement is satisfied in this case because, with respect to the denial of the zoning change, the actions complained of were taken by the Town.

Plaintiffs' Section 1983 claims have two prongs. First, plaintiffs claim a denial of equal protection rights. Second, plaintiffs clam denial of due process rights—both substantive and procedural. The court considers each claim below.

### i. *The Equal Protection Claim*

The constitutional right to equal protection of the law is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Disabled American Veterans v. United States Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir.1992).

To establish an equal protection violation based upon selective enforcement, a plaintiff must show: "(1) that the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based upon impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir.1999); *see Latrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir.1999). The "key issue" in an equal protection claim alleging selective enforcement is impermissible motive. *Id.* Thus, it must be shown that the disparate treatment alleged was motivated by an intention to discriminate based upon impermissible considerations, such as race or by a malicious or bad faith intent to injure the person. *See Quinn v. Nassau County Police Department*, 53 F.Supp.2d 347, 355 (E.D.N.Y. 1999).

Ferrara appears to argue that he was treated differently from others, who, at different times and under presumably different circumstances, sought to construct towers in the Town. Aside from the broad

allegations of the complaint, the equal protection claim is not sufficiently factually developed at this juncture for full analysis. The court is therefore not willing to dismiss the equal protection claim for failure to state a claim this early in the proceedings. Accordingly, the court denies the motion at this time.

### ii. The Due Process Claims

### 1. General Principles

While Section 1983 is often used as a vehicle to challenge local land use decisions, federal judicial review of decisions in such matters is extremely deferential. As often stated, federal courts hearing civil rights cases do not sit as zoning boards of appeal over local zoning decisions. *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir.1999), quoting, *Village of Belle Terre v. Boraas*, 416 U.S. 1, 13, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting). This principle is well demonstrated by the Second Circuit's adoption of the legal standards discussed below.

 Due process has both a procedural and substantive component. Procedural due process requirements are generally satisfied where the denial of plaintiff's request is preceded by notice and a hearing and followed by a written explanation. *Natale*, 170 F.3d at 262. Substantive due process, on the other hand, refers not to particular hearing procedures, but circumscribes an "outer limit" on permissible governmental action. *Natale*, 170 F.3d at 263.

 Substantive due process rights are violated only by conduct "so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale*, 170 F.3d at 263. The mere violation of state zoning laws is not sufficient to demonstrate conduct so outrageous as to violate the substantive component of the due process clause. *Natale*, 170 F.3d at 262. Indeed, even a state court ruling that state zoning laws have been violated is not, standing alone, sufficient to constitute a substantive due process violation. *RRI Realty v. Incorporated Village of Southampton*, 870 F.2d 911, 912 (2d Cir.1989), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989).

 To demonstrate a violation of due process rights based upon a zoning decision, whether on procedural or substantive due process grounds, a plaintiff must first demonstrate that he possesses a federally protected property right to the relief sought. *Lisa's Party City*, 185 F.3d at 16; *Natale*, 170 F.3d at 263; *Penlyn Development Corp. v. Incorporated Village of Lloyd Harbor*, 51 F.Supp.2d 255, 261 (E.D.N.Y.1999). It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process.

A protected property interest may, in limited circumstances, include the right to use one's land in a certain way. In such cases a "right," such as a right to a permit or a change in zoning, may constitute a protected property right, the denial of which implicates the protections of the due process clause. *RRI Realty*, 870 F.2d at 915. Such a property right exists, however, only if the plaintiff can show a "clear entitlement" to the relief sought, *Natale*, 170 F.3d at 263; a mere "abstract need or desire" is insufficient. *RRI Realty*, 870 F.2d at 915, quoting, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The question of entitlement turns on whether the local authority has discretion to deny what is sought or, in the alternative, whether relief must be granted based upon objectively ascertainable criteria. *Id.* The issue to be examined is not merely whether the rejection of plaintiff's application was arbitrary and capricious. Instead, the issue is whether, in the absence of the alleged due process violation, there would have been "either a certainty or a very strong likelihood that the application would have been granted." *RRI Realty*,

870 F.2d at 917, quoting, *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir. 1985).

The Second Circuit has instructed that the *Yale Auto Parts* "entitlement" test be applied with "considerable rigor." *RRI Realty,* 870 F.2d at 918. Consistently emphasized is the importance of considering the degree of discretion afforded the local authority, rather than the "estimated probability" that the local authority will act favorably upon plaintiff's application. *Id.* Even if "objective observers would estimate that the probability of [obtaining the relief sought] was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." *RRI Realty,* 870 F.2d at 918. A protected property interest will be found only if the degree of discretion afforded the local authority is so narrow that approval is "virtually assured." *Id.*

The issue of whether a protected property interest exists is a matter of law for the court to decide. *Id.* Although the presence of discretion will almost certainly defeat the finding of a protected property interest, every application that might somehow be the subject of a discretionary decision is not removed from constitutional protection. Thus, while the standard is rigorous, a "theoretical possibility of discretionary action does not automatically" remove the action sought from the realm of the protected property interest. *Sullivan v. Town of Salem,* 805 F.2d 81, 85 (2d Cir.1986).

Because the court considers the property right issue as a threshold matter, a civil rights due process claims may be rejected without the necessity of exploring whether the local authority has acted in an arbitrary manner. Specifically, in cases where there is no "entitlement," and therefore no

protected property interest, it will matter not how the regulator's actions are characterized. The case may be dismissed at the outset based upon the lack of a constitutionally protected property interest. *RRI Realty,* 870 F.2d at 918.

### 2. Plaintiffs Do Not Have A Property Right to a Change in Zoning

■ The protected property right or "entitlement," forming the basis of plaintiffs' due process challenge is the right to a zoning change that would allow construction of the Tower.[4] Resolution of this issue requires consideration not only of the requirements of the TCA which, importantly, preserve local zoning authority, *see* 47 U.S.C. § 332(c)(7)(A), but also of the state law and/or local zoning ordinances pursuant to which the Town acted. *See Sprint Spectrum L.P. v. Willoth,* 176 F.3d 630, 644 (2d Cir.1999) (authority providing the legal basis to deny an application to construct facility lies in state law).

To the extent that plaintiffs allege entitlement based upon the TCA, that claim must be rejected. The TCA, as discussed above, specifically preserves local zoning authority. As set forth in the Senate Report, Section 332 "preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances" set forth in Section 332. Sen. Rep. No. 104–230 at 458 (1996). The Senate Report further states that localities were to have the "flexibility to treat facilities that create different visual, aesthetic or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services." *Id.* at 459. The clear and express decision of Congress to retain at least a certain amount of traditional local zoning discre-

---

4. In their memorandum of law, plaintiffs refer repeatedly to their rights to receive timely decisions regarding their various applications, and not to the right to construct the Tower. The relief sought here, however, is clearly the right to construct the Tower. Thus, the property right which must be proven is the alleged property right to construct the Tower at the desired location.

tion negates a claim of entitlement based upon the TCA.

Nor can plaintiffs base a claim of entitlement upon state law. The QPSUD ordinance grants the Town discretion to consider and reject applications for a QPSUD zoning variance. An applicant for a QPSUD change of zoning must demonstrate a need for the variance. That need is then balanced against countervailing considerations such as aesthetics and the impact upon the character of the community. In view of the fact that the Town Board has discretion, under the QPSUD ordinance, to deny a variance allowing for the construction of a particular tower in a particular location, plaintiffs can claim no Constitutional entitlement pursuant to that ordinance.[5]

This remains true even if the QPSUD ordinance were to be held invalid. The discretion granted the Town under the ordinance, even if such discretion was unlawful, prevents plaintiffs from having an expectation of being granted a zoning variance sufficient to rise to the level of a protected property interest. *See Dean Tarry Corp. v. Friedlander,* 826 F.2d 210, 212–13 (2d Cir.1987) (refusing to find entitlement even where zoning ordinance was subsequently struck down as granting too much discretion to local governing body).

The "special exception" ordinance that was replaced by the QPSUD ordinance similarly fails to create an entitlement sufficient to implicate due process rights. Plaintiffs cannot claim that they had any entitlement to have their application processed pursuant to that procedure, as opposed to the newly enacted QPSUD ordinance. There is no right to an existing classification of one's property. *Orange Lake Associates, Inc. v. Kirkpatrick,* 21 F.3d 1214,1225 (2d Cir.1994); *Ellentuck v. Klein,* 570 F.2d 414, 429 (2d Cir.1978)

("landowner has no vested interest in the existing classification of his property"). Nor are there any assurances that zoning regulations will remain unchanged. *Sag Harbor Port Associates v. Village of Sag Harbor,* 21 F.Supp.2d 179, 183–84 (E.D.N.Y.1998), *aff'd.,* 182 F.3d 901 (2d Cir.1999). Thus, whether or not plaintiffs would have been entitled to a special exception permit, had the zoning law remained the same, is immaterial to the entitlement issue. *Id.*

Finally, the court rejects the notion that the classification of communications towers as public utilities creates an entitlement to the construction sought. It is true that under New York law cellular telephone companies have the status of public utilities. *Sprint Spectrum,* 65 F.Supp.2d at 155; *Cellular Telephone Co. v. Rosenberg,* 82 N.Y.2d 364, 371, 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993). This status entitles such companies to wider zoning latitude that other entities and requires the application of a different standard. *Sprint Spectrum,* 65 F.Supp.2d at 155.

Nonetheless, even public utilities are not granted a right so broad as to create an entitlement under Federal law. While the local governing body must consider the need for the facility and balance that need against the intrusion to the community, there remains still local discretion sufficient to defeat the entitlement claim. Accordingly, the court holds that even public utility status does not create the entitlement necessary to state a due process claim under *Yale Auto Parts* and its progeny.

For the foregoing reasons, the court holds that plaintiffs cannot show an entitlement to the zoning change sought. Accordingly, the court dismisses all of plaintiffs' Section 1983 due process claims, both procedural and substantive.

---

**5.** This is not a case like *Walz v. Town of Smithtown,* 46 F.3d 162 (2d Cir.), *cert. denied,* 515 U.S. 1131, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995), where compliance with application criteria required the issuance of a permit.

*See Walz,* 46 F.3d at 168 (quoting relevant ordinance which stated that upon compliance with application requirements a permit "shall" be issued).

### iii. Claims Against Cannuscio and Halsey

The claims against Cannuscio and Halsey are referred to as claims of "extortion." In support of the claims, plaintiffs refer to the outrageous conduct of these local officials who are alleged to have extorted money from Ferrara in exchange for favorable votes on VBI's application. Plaintiffs further allege that Cannuscio and Halsey lied to government agents and participated in an investigation in an effort to have Ferrara prosecuted on Federal bribery charges. According to the complaint, the actions of Cannuscio and Halsey deprived Ferrara of his procedural and substantive due process rights as well as his right to equal protection.

Because the claims of Cannuscio and Halsey are due process claims, a finding of entitlement must precede consideration of the conduct alleged, no matter how egregious that conduct is alleged to have been. *Natale*, 170 F.3d at 263 (before a plaintiff is permitted to establish conduct violative of substantive due process he must first establish a federally protectable property right); *RRI Realty* 870 F.2d at 918 (focusing on entitlement issue permits threshold rejection of due process claim "without awaiting exploration of whether the regulator acted so arbitrarily as to offend substantive due process in the particular case").

Having rejected plaintiffs' entitlement claim above, the absence of a federally protected property right similarly defeats plaintiffs' due process claims against Cannuscio and Halsey. Accordingly, the court dismisses all Section 1983 due process claims alleged against these defendants. To the extent that plaintiffs have any Equal Protection claims against these defendants, such claims must await, as discussed above, further factual development prior to any disposition by the court.[6]

### iv. Claims Against Other Individual Defendants

Defendants have moved to dismiss the individual claims against the Town Board members, other than Cannuscio and Halsey. Plaintiffs have indicated a willingness to dismiss these individual claims. An appropriate stipulation should be prepared effectuating the removal of these Town Board members from this action.

### v. Claims Relating to the Passage of the QPSUD Ordinance

Defendants argue that the individual defendants are entitled to absolute judicial immunity in connection with the passage of the zoning ordinance creating the QPSUD district. Plaintiffs do not disagree with this proposition but argue that they do not seek individual liability in connection with this claim. Instead, plaintiffs claim that the passing of the QPSUD ordinance was an unconstitutional exercise of the Town Board's legislative powers. The QPSUD ordinance is alleged to be unconstitutionally vague and to have been unconstitutionally applied to plaintiffs.

The issue as to the constitutionality of the QPSUD zoning ordinance turns on the question of whether the ordinance bears a rational relationship to a legitimate government objective. *Orange Lake Associates, Inc. v. Kirkpatrick*, 21 F.3d 1214, 1225 (2d Cir.1994). The ordinance may be challenged on the ground that it is "clearly arbitrary, unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Id.*, quoting, *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1063–64 (2d Cir.1989).

Dismissal of plaintiffs' claim relating to the constitutionality of the QPSUD ordi-

---

**6.** Defendants raise the possibility that plaintiffs allege civil rights claims against Cannuscio and Halsey based upon false arrest or malicious prosecution. It is argued that any such claims must fail for lack of proximate cause. Since plaintiffs nowhere allege such civil rights violations, either in the complaint or in their response to defendants' motion, the court need not consider any defenses thereto.

nance is premature. The court is unaware of any facts preceding passage of this ordinance and must await further factual development before ruling on the merits of plaintiff's claims. Accordingly, the court declines to dismiss this claim at this time.

### vi. *Commerce Clause*

██ Plaintiffs claim that the actions of defendants violated the Commerce Clause of the United States Constitution. Plaintiffs' Commerce Clause claim appears in the complaint with no factual elaboration. The court assumes, however, that plaintiff claims that the actions of defendants have placed an undue burden on interstate commerce. To succeed on such a claim, plaintiffs must show that the conduct complained of "discriminates against, as opposed to having only incidental effects on, interstate commerce." *Smart SMR of New York, Inc. v. Zoning Commission of Stratford,* 995 F.Supp. 52, 60 (D.Conn. 1998); *see Oregon Waste Sys., Inc. v. Department of Environmental Quality,* 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994).

Plaintiffs' complaint alleges neither facts indicating a benefit to in-state interests nor a burdening of out-of-state interests. Instead, it is alleged only that defendants' actions have deprived plaintiffs of the right to earn an income from the operation of the proposed tower. Under these circumstances, plaintiffs have stated no claim under the Commerce Clause. *Accord Smart SMR,* 995 F.Supp. at 60. Any such claim is dismissed.

### vii. *Supremacy Clause*

██ The final Section 1983 constitutional claim made by plaintiffs seeks to state a claim pursuant to the Supremacy Clause. That clause of the Constitution, however, does not create rights enforceable pursuant to Section 1983. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 107, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989); *National Helicopter Corporation of America v. City of New York,* 1999 WL 562031 * 4 (S.D.N.Y. July 30, 1999). Accordingly, the court dismisses any civil rights claim based upon the Supremacy Clause as frivolous.[7]

### IV. *The Antitrust Claims*

Plaintiffs purport to state a claim under the Federal Antitrust Laws. According to plaintiffs, the Town's QPSUD ordinance created an "improper restraint on competition and trade" in violation of the "Local Government Antitrust Act." In support of their claim, plaintiffs cite to 15 U.S.C. § 1311. This citation however, refers to a section setting forth definitions and creates no cause of action.

Having invoked the term "Local Government Antitrust Act," the court assumes that plaintiffs refer to 15 U.S.C. §§ 34–36. These sections, however, do not impose liability on local governments; they set forth the immunity of these entities to antitrust claims. In their response to defendants' motion to dismiss, plaintiffs articulate neither the statutory nor factual basis for the alleged antitrust claims. Instead, they argue only that a local government's immunity does not extend to an action seeking only injunctive relief.

██ Even assuming that plaintiffs may obtain injunctive relief against the Town for an antitrust violation, no such claim is stated here. Not only have plaintiffs failed to set forth the statutory basis for any antitrust claim, they have pled no facts that would support any such claim. The bare assertion of monetary injury is insuf-

---

7. Plaintiffs' complaint also appears to seek enforcement of the TCA pursuant to Section 1983. It is unclear whether such rights may be so enforced. *Compare Smart SMR v. Zoning Commission of Town of Stratford,* 995 F.Supp. 52, 61 (D.Conn.1998) ( holding that a violation of TCA also violates Section 1983) *with Omnipoint Communications, Inc. v.Penn Forest Township,* 42 F.Supp.2d 493, 505–06 (M.D.Pa.1999) (Section 1983 may not be used as vehicle to enforce TCA rights). Here, the court need not decide this issue because, as noted above, defendants are not be liable under the TCA.

**396**

ficient to state a claim under the antitrust laws. Instead, plaintiffs must allege antitrust injury. Here, plaintiffs allege no adverse impact on any relevant market; indeed, they fail to even allege the existence of such a market. In view of these facts, the court dismisses plaintiff's complaint to the extent that it attempts to state any claim pursuant to the Federal antitrust laws as frivolous. *See George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 139 (2d Cir.1998) (affirming dismissal of Sherman Act claim on ground that plaintiff failed to show antitrust injury).

### V. *Statute of Limitations*

With respect to the claims that remain, the court addresses briefly a statute of limitations issue raised by defendants. As defendants correctly assert, the statute of limitations of Section 1983 violations is three years. *See Owens v. Okure*, 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Defendants argue that the court may only reach specific activities that took place three years prior to the filing of this lawsuit. Thus, defendants seek to remove from this lawsuit many activities related to plaintiffs' application process because such activities took place beginning in 1991.

The three year statute in civil rights cases begins to run as of the date that plaintiff receives notice of the allegedly discriminatory action. *Tubner v. West*, 162 F.3d 1148, 1148 (2d Cir.1998); *O'Malley v, GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir.1985). The court will not dismiss any claim on statute of limitations grounds at this time but, instead awaits factual elaboration of the remaining claims.

### *CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. The court dismisses all claims brought pursuant to the TCA. The court also dismisses all claims brought pursuant to 42 U.S.C. §§ 1981, 1982, 1985

and all TCA, Due Process, Commerce Clause and Supremacy Clause claims brought pursuant to Section 1983. The court also dismisses all Antitrust Claims.

The parties are to contact the Magistrate Judge assigned to this case so that they may proceed with discovery in connection with their 42 U.S.C. § 1983 equal protection claims and the claim alleging the unconstitutionality of the QPSUD ordinance. The parties are to prepare a stipulation removing the names of defendants Drew, Rogers and Heaney from the complaint.

SO ORDERED