**MOORE U.S.A. INC., and Toppan Forms Co., Ltd., Plaintiffs,**

v.

**The STANDARD REGISTER COMPANY, Defendant.**

No. 98–CV–485C(F).

United States District Court, W.D. New York.

Feb. 22, 2001.

---

Nixon & Vanderhye P.C. (Robert A. Vanderhye, James D. Berquist, of counsel), Arlington, VA, Cohen Swados Wright Hanifin Bradford & Brett (Laurence B. Oppenheimer, of counsel), Buffalo, New York, for plaintiffs.

Oblon, Spivak, McClelland, Maier & Neustadt, P.C. (Charles L. Gholz, William T. Enos, of counsel), Arlington, VA, Gibson, McAskill & Crosby (Brian P. Crosby, of counsel), Buffalo, New York, for defendants.

CURTIN, District Judge.

## INTRODUCTION

Here, the court discusses two of the four motions currently before the court in this patent infringement action: (1) defendant Standard Register Company's ("SRC") motion for leave to file an amended answer asserting new counterclaims and naming new parties, Item 141; and (2) plaintiff Moore North America, Inc.'s ("Moore NA")[1] motion to dismiss certain counterclaims from SRC's amended answer and to dismiss certain parties named by SRC in its amended answer, Item 116.

## BACKGROUND

Moore's motion to dismiss and SRC's motion for leave to amend are essentially two sides of the same coin. In December 1999, this court granted Moore's motion for reconsideration (Item 71) and in so doing granted Moore leave to amend its

---

1. In prior orders, the court has referred to Moore NA simply as "Moore." For reasons discussed *infra,* though, the court now refers to each Moore entity with more specificity.

complaint so that Moore could incorporate the accusation that SRC had infringed the '464 patent. Item 98. Aside from the allegations relating to the '464 patent, the second-amended complaint ("the amended complaint") was essentially identical to the previous version. Item 102.

In January 2000, SRC served and filed its answer to the amended complaint ("the amended answer"). In answering, though, SRC included *ten* new counterclaims and named two new counterclaim-defendants. Item 111. Neither the new counterclaims nor the newly named parties were related to Moore's amendment to include an infringement claim under the '464 patent.

## SRC'S FACTUAL ALLEGATIONS

As stated *supra*, SRC's amended answer contains ten new counterclaims. As will be discussed *infra*, a review of SRC's new factual allegations is mostly relevant to determining whether SRC's antitrust counterclaims can survive Moore's motion to dismiss. In any event, the court presents SRC's factual allegations in summary form and, for the purposes of the present motion to dismiss, deems SRC's factual allegations to be true.[2] *See, e.g., Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

The relevant product market in this case is pressure seal business form mailers, and the relevant geographic market is the United States. Item 111, ¶¶ 84–85. Moore NA, in conjunction with the efforts of its co-conspirators, Toppan Printing Co., Ltd. of Japan ("Toppan Printing") and Moore Corporation Limited of Canada ("Moore Canada"), holds a 65 percent share of the overall product market, *id.* ¶ 34, and has held a majority of the product market here in the United States for

each year it has sold pressure seal business forms, *id.* ¶ 35.

In 1992, Moore NA approached SRC about buying a license for the pressure seal technology that is protected by the '128 patent. SRC refused this offer because it believed, and still believes, that its pressure seal adhesive does not infringe the '128 patent. *Id.* ¶¶ 39 & 41. In 1994, SRC started selling its pressure seal business forms throughout the United States. *Id.* ¶ 40.

Soon after SRC began selling pressure seal forms, Moore NA commenced an infringement action against SRC in the Eastern District of Virginia ("the EDVA litigation"). Moore NA commenced the EDVA litigation without first conducting a reasonable investigation into whether there was any factual basis for asserting a claim for infringement of the '128 patent. *Id.* ¶ 42. In addition, SRC had advised Moore NA that the SRC adhesive could not possibly infringe the '128 patent because the SRC adhesive did not contain styrene, which SRC states is an essential ingredient in Moore NA's patented adhesive. Nevertheless, Moore NA "recklessly" ignored SRC's disclosure and pressed on with the EDVA litigation in a bad faith attempt to harass SRC and interfere with SRC's business affairs. Item 111, ¶¶ 43–44, 49.

In August 1998, Moore NA commenced another infringement action against SRC here in the Western District of New York. In connection with the action before this court, Toppan Printing purportedly granted Moore Canada an exclusive license of the '128 patent so that Moore Canada could grant Moore NA an "appearance" of standing to sue on the '128 patent. Item 111, ¶¶ 52–54. Furthermore, SRC believes

---

**2.** The court does not deem SRC's allegations to be true where those allegations are clearly

at odds with the law of the case. *See infra.*

that Toppan Printing, not Toppan Forms, is the real party in interest when it comes to the '128 patent, since Toppan Forms is said to be a mere "division" of Toppan Printing. *See id.* ¶¶ 22, 25.

Toppan Printing, Moore Canada, and Moore NA entered into their exclusive licensing arrangement as part of a conspiracy to restrain trade and secure a monopoly in the U.S. market for pressure seal business forms. More specifically, Toppan Printing, Moore Canada, and Moore NA entered into this arrangement so that Moore NA could commence "numerous lawsuits against all those who have attempted to market pressure seal business mailer forms in the United States" without regard to whether these infringement actions had any merit. *Id.* ¶¶ 55–57, 67–69. Further, Toppan Printing, Moore Canada, and Moore NA knew that the '128 patent was an exceptionally "narrow" patent and that many of these infringement actions would be baseless as a result. *Id.* ¶¶ 69.

Furthermore, Toppan Printing, Moore Canada, and Moore NA entered into their licensing arrangement so that Toppan Printing and Moore Canada would not have to join the American infringement actions as necessary parties. In this way, these three entities intended to stymie the discovery that defendants like SRC would need and to conceal the baseless nature of the various infringement actions. *Id.* Finally, Moore NA's regular consultations with Toppan Printing and Moore Canada throughout this action (and others) has further bolstered the illegal conspiracy to restrain trade and maintain monopoly power. *Id.* ¶ 66.

In late 1998, SRC discovered another agreement between Toppan Printing and Moore Canada which SRC refers to as "the secret side agreement." Item 111, ¶ 58. As it has in the past, SRC states that this so-called secret side agreement demonstrates that Moore NA North

America lacks standing to enforce the '128 patent and shows how Moore NA has tried to hide the sham nature of the present litigation. *Id.* ¶¶ 60–65. However, the law of this case at least partly precludes SRC from making such allegations. In its order of May 2000, this court rejected SRC's theory that the so-called secret side agreement granted "substantial rights" in the '128 patent to Toppan Forms and rejected the argument that this side agreement undermines Moore's standing to enforce the '128 patent. *See* Item 168, pp. 7–8. In any event, Toppan Printing, Moore Canada, and Moore NA's attempts to conceal this side agreement is alleged to represent further evidence of their efforts to promote their baseless litigation and to monopolize the U.S. market for pressure seal business forms. Item 111, ¶¶ 71–72.

Then in May 1999, Moore NA accused SRC of concealing discoverable documents in the EDVA litigation. Moore knew its allegations were false at the time, and leveled its accusations for the sole purpose of causing SRC to incur undue expense. *Id.* ¶¶ 75–76.

In September 1999, Toppan Printing and Moore Canada amended their exclusive licensing agreement in order to further the conspiracy to restrain trade and maintain monopoly power. *Id.* ¶ 77. This amendment purported to grant Moore Canada further rights in the '128 patent, which Moore Canada then assigned to Moore NA. Also in September 1999, Toppan Printing refused to honor SRC's many requests for discovery relating to the validity, enforceability, and scope of the '128 patent. Item 111, ¶ 75. Toppan Printing withheld this information and these documents from SRC in an effort to further the unlawful conspiracy.

Again in September 1999, Moore NA filed a new infringement action here in the Western District of New York based on

the '242 patent. Moore's complaint was facially insufficient and was filed solely for the purpose of interfering with and learning about SRC's business affairs. *Id.* ¶ 76. Further, Moore NA followed the filing of its baseless complaint in the '242 action with massive discovery demands. The baseless nature of the '242 action was revealed by the fact that Moore withdrew the '242 action in November 1999. Item 111, ¶¶ 78–79.

## DISCUSSION

### I. SRC's Motion for Leave to Amend Its Answer

■ The decision of whether to grant leave to amend a pleading is a decision that rests within the trial court's discretion. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be "freely granted" unless one of three circumstances exist: (i) the party seeking leave has acted in bad faith, (ii) there has been an undue delay in seeking leave or there will be unfair prejudice to the opposing party if leave is granted, or (iii) the proposed amendment would be futile. *See id.;* Fed.R.Civ.P. 15(a). A proposed amendment is "futile" if, among other things, it would be subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In this case, there is also a 12(b)(6) motion pending before the court. Therefore, the court can resolve both the issue of futility and Moore's motion to dismiss in the same analysis. Put another way, if the court grants Moore's motion to dismiss, then the court would deny SRC's motion for leave to amend. On the other hand, if the court denies Moore's motion to dismiss, then the court would "freely" grant SRC leave to amend its answer to include valid counterclaims.

Before the court proceeds to resolving Moore's motion to dismiss, though, there is also a question of whether leave to amend should be denied to SRC because of undue prejudice to Moore. Moore insists that it would be unfairly prejudiced if the court allowed SRC to assert a whole new set of counterclaims, many of which are based on allegations of antitrust violations. *See* Item 160, pp. 3–5. As to the antitrust counterclaims, Moore argues that the "overwhelming weight of authority ... holds that the patent and antitrust issues should be bifurcated" and that litigation relative to the antitrust issues should be stayed until the infringement issues are decided. *Id.* at 4–5 (citing various cases). Here, Moore relies on a decision from this district, in which Judge Telesca wrote: "[T]he unfair competition and antitrust causes of action should, for the sake of convenience and in order to avoid confusion of issues and undue delay, be separated from the patent issues." *CMI, Inc. v. Verax Systems, Inc.,* 1987 WL 46536, at *2 (W.D.N.Y. July 22, 1987) (citing *Components, Inc. v. Western Electric Company,* 318 F.Supp. 959 (D.Me.1970)).

*CMI v. Verax* is substantially on point with this action. This court believes that Judge Telesca's case management strategy in that case would prove efficient and logical in this case as well. Yet, the fact that this court would likely bifurcate the issues of patent infringement from SRC's antitrust counterclaims does not mean that Moore would be unduly prejudiced if the court permitted SRC to amend its answer to include antitrust counterclaims. Rather, this court would stay litigation relating to the antitrust issues until the infringement claims were resolved. In this way, Moore would suffer no prejudice if SRC is permitted to amend its answer to include antitrust counterclaims.

When taken together, the policies of Rule 15, the leading case of *Foman v. Davis*, and cases like *CMI v. Verax* indicate that there is no prejudice to Moore that would bar SRC from amending its answer to include the new counterclaims and the new parties. The issue that remains, then, is whether the new counterclaims are subject to dismissal under Rule 12(b)(6) and whether the new parties are subject to dismissal for misjoinder under Rule 21.

## II. Moore's Motion to Dismiss Counterclaims

### A. *"The Antitrust Claims"*: Counterclaims [3] *Ten, Eleven, Twelve, Thirteen, and Fourteen*

In counterclaims ten through fourteen, SRC incorporates its many factual allegations by reference and asserts five separate antitrust counterclaims. All of these counterclaims arise under sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2.

#### 1. *Standard of Review on 12(b)(6) Motion to Dismiss in an Antitrust Case.*

In deciding a motion to dismiss, the court must view the complaint in the light most favorable to plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court must accept as true the factual allegations stated in the complaint, *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), and draw all reasonable inferences in favor of the plaintiffs. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). A motion to dismiss can only be granted if it appears beyond doubt that the nonmoving party can prove no set of facts in support

of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The pleading requirement in an antitrust action is governed by the "short, plain and concise" language in Rule 8 of Federal Rules of Civil Procedure. *See Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 681 (6th Cir.1988). In fact, because of the conspiratorial nature of certain antitrust claims, "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Company v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).

Nonetheless, when presented with a motion to dismiss a Sherman Act complaint pursuant to Fed.R.Civ.P. 12(b)(6), the court must determine whether "allegations covering all the elements that comprise the theory for relief" have been stated as required." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 1228(R8) (1995) (citing *United States of Am. v. Employing Plasterers Assoc.*, 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618 (1954)). "[A] bare bones statement of conspiracy or of injury under the antitrust laws permits dismissal." *Heart Disease Research Found. v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972). In other words, it is not enough merely to state that a conspiracy has taken place. Where possible, there should be some details of time and place and the alleged effect of the conspiracy. This is not to say the pleader must plead his evidence; further details may be secured by means of discovery, and related devices. Courts allow plaintiffs considerable leeway; details may not be readily known at the time of the pleading. *See 2A Moore's*

---

**3.** In its amended answer, SRC refers to its counterclaims as "counts," as in "tenth count" and "eleventh count." In this opinion, the court will refer to SRC's new claims as counterclaims.

*Federal Practice* ¶ 8.17[5]. This description has been cited with approval in the context of complaints alleging federal antitrust conspiracy. *See State of New York v. Cedar Park Concrete Corp.,* 665 F.Supp. 238, 246–47 (S.D.N.Y.1987).

Consequently, the allegations must be stated in terms that are neither vague nor conclusory. *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.,* 14 F.3d 213, 220–21 (4th Cir.1994). Conclusory allegations which "merely recite the litany of antitrust will not suffice;" the court may insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed. *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

**2.** *Section 1 of the Sherman Act: "Restraint of Trade."*

■ Section One of the Sherman Antitrust Act reads, in relevant part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony. . . .

15 U.S.C. § 1 (1973). In order to withstand a motion to dismiss, the claimant in a Sherman Antitrust Act conspiracy action must allege: (1) concerted action; (2) by two or more persons; (3) that unreason-ably restrains interstate or foreign trade or commerce. *Capital Imaging Assoc., P.C. v. Mohawk Valley Med. Assoc., Inc.,* 996 F.2d 537, 542 (2d Cir.), *cert. denied,* 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993).

SRC asserts only one counterclaim (number ten) under section 1 of the Sherman Act. In this counterclaim, SRC alleges that Moore NA conspired with Toppan Printing and Moore Canada to restrain trade unreasonably in the pressure seal business forms market.[4]

As to the two related prongs of "concerted action by two or more persons," Moore NA insists that SRC fails to allege a concerted action between Moore NA and any other actor. Moore insists that SRC's allegation that Toppan Printing conspired with Moore NA to restrain trade is not worthy of credence. *See* Item 117, p. 14. On this score, Moore argues that Toppan Printing has no legally enforceable rights in the '128 patent and therefore could not possibly have conspired with Moore NA to enforce the '128 patent in an unlawful way. *Id.*

The court rejects Moore's argument on this point. The fact that only Moore NA has a legal right to enforce the '128 patent does not foreclose the possibility that Toppan Printing and Moore Canada conspired with Moore NA to enforce the '128 patent in a vexatious and bad faith manner. Moreover, by offering this argument Moore is urging the court to accept its version of the facts and reject SRC's allegations as incredible. This the court cannot do. Finally, Moore's argument on this

---

**4.** Counterclaim ten reads as follows:

[Moore, Toppan Printing, and Moore Canada], through the above-described conduct, have conspired and combined in a plan, common design, and understanding with specific intent to eliminate competitors for pressure seal business mailer forms in the United States.

The conduct of [Moore, Toppan Printing, and Moore Canada] constitutes a contract, combination, or conspiracy and unreasonable restraint of trade in pressure seal business mailer forms in the United States in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

Item 111, ¶¶ 121–22.

point ignores the slight burden that SRC bears in opposing a 12(b)(6) motion. The issue is not whether SRC's allegations seem plausible, but whether those allegations, if proven, could support a finding of a concerted action. Since SRC has clearly alleged that Moore NA conspired with Toppan Printing and Moore Canada in an effort to restrain trade in the pressure seal business forms market, SRC has sufficiently alleged "a concerted action by two or more persons."

Next, Moore maintains that SRC has failed to allege an adequate claim under section 1 because it has not specifically alleged that Moore NA, Toppan Printing, and Moore Canada shared a "conscious commitment to a common scheme designed to achieve unlawful objectives." Item 117, pp. 14–15 (citing *Mitsubishi Elec. Corp. v. IMS Technology, Inc.*, 1997 WL 630187, (N.D.Ill. Sep. 30, 1997)). Here again, Moore argues that the exclusive licensing agreements between Toppan Forms and Moore Canada make "any such 'unity of purpose' . . . a factual impossibility." Item 117, p. 15. As before, the court rejects Moore's argument on this point. The fact that Toppan Forms has apparently relinquished all substantial rights in the '128 patent does not necessarily foreclose the possibility that Toppan Printing and Moore Canada have entered into a secret conspiracy with Moore NA to restrain trade in the relevant market by commencing a series of baseless lawsuits against Moore NA's competitors.

Finally, Moore insists that counterclaim ten must be dismissed because of SRC's insufficient and "conclusory references to a 'conspiracy'...." Item 117, p. 15. Although conclusory allegations are insufficient to survive a 12(b)(6) motion in an antitrust context, SRC has done more than make conclusory allegations regarding the existence of a conspiracy to restrain trade unreasonably. Again, by way of example,

SRC has alleged that Moore NA, Toppan Printing, and Moore Canada have combined to commence baseless lawsuits against Moore's competitors, stymie necessary discovery and thwart valid defenses, and arrange sham licensing arrangements so that Moore NA may sue for infringement without joining its co-conspirators as necessary parties.

In light of the foregoing discussion, the court finds that SRC has sufficiently alleged a violation of 15 U.S.C. § 1. Therefore, the court denies Moore's motion to dismiss as to counterclaim ten in SRC's amended answer.

3. *Section 2 of the Sherman Act: "Monopoly Power"*

"To allege the offense of actual monopoly under Section 2 of the Sherman Act, [SRC] must claim '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Clorox Co. v. Winthrop*, 836 F.Supp. 983, 993 (E.D.N.Y.1993) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)). Likewise, to allege an attempted acquisition of monopoly power, SRC must claim that Moore NA and its alleged co-conspirators have "(1) . . . engaged in predatory or anti-competitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power . . . ." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993).

SRC asserts four counterclaims (eleven through fourteen) under section 2 of the Sherman Act. In essence, SRC's section 2 counterclaims amount to claims that Moore NA, along with Toppan Printing and Moore Canada, secured and main-

tained monopoly power, attempted to secure monopoly power, and conspired to secure and maintain monopoly power.[5]

▇▇▇ Moore argues that "counterclaims 11–14 all suffer from the same basic pleading deficiencies." First, Moore contends that SRC has failed to adequately allege Moore NA's market power. On this score, SRC alleges that Moore has enjoyed a 65 percent share of the product market and has held a "majority" of the product market in the United States since the early 1990s. Nevertheless, Moore argues that these "naked assumptions are insufficient as a matter of law to support a Section 2 violation." Item 117, p. 17. The court rejects Moore's argument on this point, since a plaintiff asserting a section 2 claim under the Sherman Act may survive a Rule 12(b)(6) motion simply by alleging that the defendant possesses a certain level of market share or market power. *See Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924 (9th Cir.1980) (alleging very same market share that SRC alleges in this action: 65 percent). There-

fore, the court finds that SRC's section 2 counterclaims are not subject to dismissal because of SRC's terse allegations of Moore's market power.

▇▇▇ Next, Moore argues that SRC's section 2 counterclaims must be dismissed because SRC has not "adequately define[d] the product market." Item 117, p. 18. Moore continues: "Contrary to SRC's assumption, the correct definition of that market includes all products that are *reasonably interchangeable* with those described in the patents." *Id.* Here again, Moore ignores the appropriate standard of review and urges its own view of the facts. As the court has already held, this kind of argument has no place in a Rule 12(b)(6) motion. For the purposes of the present motion, the court must deem SRC's allegations to be true. Again, SRC alleges that the relevant market is the U.S. market for pressure seal business forms. SRC has further alleged that Moore's market power is sufficient to support a section 2 violation.

---

5. These four counterclaims read as follows:

> [Moore, Toppan Printing, and Moore Canada] possessed monopoly power in the relevant product market at least through 1999. [Moore, Toppan Printing, and Moore Canada] willfully maintained [their] monopoly power by engaging in the above-described predatory acts. [The conduct of [Moore, Toppan Printing, and Moore Canada] is a violation of Section 2 of the Sherman Act (15 U.S.C. § 2).]

Item 111, ¶¶ 125–26.

> The above described predatory conduct of [Moore, Toppan Printing, and Moore Canada] constitutes acts of monopolization undertaken with the specific intent to monopolize and preserve a monopoly in the market for pressure seal business mailer forms in the United States. . . .
> Such conduct in attempting to monopolize the market for pressure seal business mailer forms in the United States constitutes a violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

Item 111, ¶¶ 128–29.

> As evidenced by the above-described predatory conduct of [Moore, Toppan Printing, and Moore Canada], those parties agreed to attempt to monopolize and preserve the monopoly in the pressure seal business mailer forms market in the United States, engaged in predatory conduct in pursuit of that end, all with a dangerous probability of success in achieving that end, and, in fact, succeeded in achieving that end, all in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

Item 111, ¶ 132.

> By initiating and/or prosecuting this action, the '242 suit and the [Eastern District of Virginia] suit, even though [Moore, Toppan Printing, and Moore Canada] knew or should have known that the '128 patent was not infringed by the SRC adhesive, [Moore, Toppan Printing, and Moore Canada] have acted in violation of Section 2 of the Sherman Act (115 USC § 2).

Item 111, ¶ 135.

■ In light the foregoing, the court finds that SRC has sufficiently alleged Moore's market power. SRC has also sufficiently alleged the existence of a product market and a geographic market. Therefore, the court denies Moore's motion to dismiss SRC's section 2 counterclaims. Furthermore, for the same reasons discussed in the "Sherman Act Section 1" analysis, *see supra* Discussion, Part I, B, 1, b, SRC has sufficiently alleged that Moore, along with Toppan Printing and Moore Canada, willfully acquired monopoly power and that they intended to acquire monopoly power through a series of anti-competitive actions.

### 4. *Noerr Doctrine & Sham Litigation Exception.*

■ The parties also dispute whether SRC may base its antitrust claims on the theory that Moore, along with alleged co-conspirators Toppan Printing and Moore Canada, have commenced these actions against SRC in an effort to interfere with SRC's business affairs and in order to restrain trade and maintain monopoly power.

The *Noerr* doctrine allows a party to petition the government for redress of a grievance without the petitioning party being subject to antitrust claims as a result of its efforts. In *California Motor Transport Co. v. Trucking Unlimited,* the Supreme Court ably defined the *Noerr* doctrine as follows:

(1) "In a representative democracy such as this, [the different] branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives. To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would im-

pute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act."

(2) "The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms."

. . . .

The same philosophy governs the approach of citizens or groups of them to ... courts, the third branch of Government. Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition.

404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (citation omitted).

Here, Moore argues that SRC's antitrust counterclaims must fail under the *Noerr* doctrine because they are all based on the theory that Moore has commenced various infringement actions against SRC. Moore's argument on this point fails for two reasons. First, Moore ignores SRC's factual allegations that are *not* based on Moore NA's litigation strategy. Indeed, SRC has alleged that Toppan Printing, Moore Canada, and Moore NA committed antitrust violations by entering into a "sham" licensing arrangement. Moreover, there is an important exception to the *Noerr* doctrine that Moore does not address adequately: the "sham litigation exception." The sham litigation exception to *Noerr* is defined in the following way.

First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.... Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of

our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental *process* —as opposed to the *outcome* of that process—as an anticompetitive weapon.

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 60–61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (citation and quotation omitted). In this case, SRC has made numerous allegations that could support a finding that Moore NA, and its alleged co-conspirators, have engaged in and are engaging in sham litigation through the present lawsuit. For example, SRC has alleged that Moore *knew* that the SRC adhesive did not infringe the '128 patent because the SRC adhesive lacked styrene as an ingredient. Nevertheless, SRC claims that Moore pressed forward with this action in an effort to interfere with SRC's business affairs. Similarly, SRC has alleged that Moore NA, Toppan Printing, and Moore Canada agreed that Moore would be the nominal plaintiff in various American infringement actions and that Toppan Printing and Moore Canada would remain on the sidelines in an effort to stymie discovery and thwart the defendants' efforts to defend themselves. Allegations like these could support a finding of "sham litigation."

Moore counters by insisting that SRC's allegations of sham litigation have "been completely discredited" in light of recent deposition testimony offered by certain SRC employees. *See* Item 173, p. 5. As before, the court again rejects Moore's attempt to interject evidence and arguments of fact into this Rule 12(b)(6) motion. In the context of this 12(b)(6) motion, Moore fails to show that the *Noerr* doctrine bars SRC's antitrust counterclaims. Thus, the court denies Moore's motion to dismiss to the extent that it relies on the immunity afforded by the *Noerr* doctrine.

**B. *Counterclaims Five and Six: "Inequitable Conduct"***

In its fifth and sixth counterclaims, SRC alleges that the '128 patent and the '464 patent, the two patents in suit, "may be unenforceable due to inequitable conduct during the original prosecution of the patent application which issued as the '128 patent." Item 111, ¶¶ 102 and 105. The issue here is whether SRC has pled counterclaims five and six with sufficient particularity. Rule 9(b) of the Federal Rules of Civil Procedure provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Further:

[T]he great weight of authority in the district courts holds that Rule 9(b) does in fact apply to claims of inequitable conduct.

These courts have reasoned that Rule 9(b) should apply since inequitable conduct is a form of fraud. Indeed, .... the Federal Circuit [has] held that intent to deceive is a required element of a claim of inequitable conduct.

*Systemation, Inc. v. Engel Industries, Inc.,* 183 F.R.D. 49, 50–51 (D.Mass.1998) (citations omitted). Like the court in *Engel,* this court finds that claims of inequitable conduct should be pled with the particularity required by Rule 9(b).

Although SRC has made extensive factual allegations in its amended answer, *see* Item 111, ¶¶ 19–91, it has failed to make a single factual allegation regarding the inequitable conduct that occurred during the original prosecution of the two patents in suit. In essence, SRC argues that the court should allow its pleadings to survive

in their present form for two reasons: (i) SRC has not yet discovered the information it needs to make specific allegations; and (ii) SRC has merely alleged that the patents in suit "may be unenforceable." Item 135, p. 36. Neither of these arguments is persuasive.

SRC's failure to allege inequitable conduct with any particularity is fatal to these two counterclaims and warrants their dismissal, without prejudice, pursuant to Rule 9(b). *See e.g., PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 764 (S.D.N.Y. 1995). Therefore, the court dismisses counterclaims five and six without prejudice and directs SRC to seek leave to amend its pleadings again once SRC believes it has discovered information that can form the basis for properly pled counterclaims based on inequitable conduct.

### C. Counterclaim Seven: "Patent Mismarking"

In its seventh counterclaim, SRC asserts a claim for patent mismarking pursuant to 35 U.S.C. § 292. Specifically, SRC alleges:

It has been and continues to be the business practice of Moore to improperly label its products. In particular, Moore has labeled its pressure seal forms with numerous "patent pending" or "patented" or "patent no.____" markings which are inaccurate and incorrect. In this regard, the products of Moore, including its pressure seal forms, list various patents which are said to cover·its various pressure seal forms, but which, in fact, do not. The listed patents are mutually exclusive, meaning that not all of the patents could apply to the same products. Accordingly, Moore N.A. has improperly mismarked its products. Upon information and belief, such conduct has been intentional and with the twin purposes of deceiving the public and deterring lawful competition.

Item 111, ¶ 109. In its order of November 1999, this court rejected SRC's attempt to assert precisely the same counterclaim. *See* Item 94, pp. 6–8.

In light of the court's ruling of November 1999, Moore argues that the law of the case bars SRC from asserting its mismarking counterclaim. *See* Item 117, p. 9. SRC responds by arguing that the law of the case is unsettled because in December 1999 SRC asked the court to reconsider its decision on the patent mismarking counterclaim. *See* Item 96. Yet, it is unclear that SRC formally moved for reconsideration, pursuant to Rule 60 or any other provision of the Federal Rules of Civil Procedure, when it filed its brief, self-styled "Request for Reconsideration." In any event, the court denies SRC's request for reconsideration (Item 96) for the same reasons set forth in the order of November 1999 (Item 94). Therefore, the order of November 1999 is the law of the case and SRC's mismarking counterclaim is barred.

### D. Counterclaim Eight: "Unfair Competition."

██ In its eighth counterclaim, SRC alleges that Moore, Toppan Printing, and Canada

recklessly brought suit against SRC without conducting the necessary, or a reasonable, investigation of the adhesive which is used on the pressure seal business mailers sold by SRC.

Had [Moore, Toppan Printing, or Moore Canada] conducted a reasonable investigation, looking at the data which were available to them or would have been made available to them upon request, they would have learned that SRC does not use the adhesive of the '128 patent.

Through the conduct referred to above, [Moore, Toppan Printing, and Moore Canada] have attempted to com-

plete unfairly and have, in fact, competed unfairly with SRC.

Item 111, ¶¶ 113–115.

Moore first argues that SRC's unfair competition claim is deficient because it fails to cite the statute or common law doctrine that Moore has allegedly violated. *See* Item 117, p. 20. The court rejects Moore's insistence that SRC identify the legal authority for its eighth counterclaim in order to survive a 12(b)(6) motion. "Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion '[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.'" *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir.1997) (citation omitted).

Moore also argues, however, that the court should dismiss SRC's eighth counterclaim because SRC has failed "to demonstrate that Moore had no 'probable cause' to bring this action...." Item 117, p. 20 (citing *Professional Real Estate*, 508 U.S. at 59, 113 S.Ct. 1920). Moore goes on to argue that "given the 'pioneering status' of the '128 patent and the scope afforded claims of 'pioneering patents' under the doctrine of equivalents, Moore had ample basis for bringing this suit." *Id.* The court rejects Moore's argument on this point as well because it assumes that SRC must carry a greater burden than SRC bears in opposing a 12(b)(6) motion. Again, for the purposes of a 12(b)(6) motion, the claimant's allegations of fact are deemed true. SRC has made extensive allegations relat-

ing to how Moore NA, Toppan Printing, and Moore Canada combined to prosecute this infringement action in bad faith. *See* Item 111, ¶¶ 55–57, 66–69. For the purposes of the present motion, those allegations are all deemed true. Thus, SRC's eighth counterclaim states a viable cause of action *to the extent* that SRC can base its claim for unfair competition on allegations of bad faith litigation.

Here, however, the court raises doubts as to whether SRC may base a claim for unfair competition on alleged bad faith litigation. Assuming *arguendo* that SRC intends to base its claim for unfair competition on New York State common law,[6] the court takes note of the fact that New York apparently does not recognize litigation as a type of unfair competition. *Bio–Technology General Corp. v. Genentech, Inc.*, 886 F.Supp. 377, 384 (S.D.N.Y.1995) (citation omitted). SRC's eighth counterclaim most likely fails if it is premised on New York State's common law doctrine of unfair competition. However, the court cannot rule conclusively on this issue, since SRC's claim for unfair competition does not specify what law Moore has violated. The court finds that judicial economy and efficiency will be best served if SRC amends its eighth counterclaim by specifying what law Moore has allegedly violated. In this way, the court may resolve the issue of whether SRC may base its claim for unfair competition on allegations of Moore's bad faith litigation. *See supra.* Thus, the court dismisses SRC's eighth counterclaim without prejudice and with leave to amend by specifying what law Moore has allegedly violated.

---

**6.** It is unclear what law and what jurisdiction SRC is seeking to invoke when it asserts this counterclaim for unfair competition. Although New York State's common law claim for unfair competition is often said to resem-

ble a claim brought under section 1125(a) of the Lanham Act, there is no federal common law claim for unfair competition. *See Nadel v. Play–By–Play Toys & Novelties, Inc.*, 208 F.3d 368, 383 (2d Cir.2000).

E. *Counterclaim Nine: "Patent Misuse"*

In counterclaim nine, SRC incorporates the many factual allegations set forth in its amended answer and alleges that the patents in suit are unenforceable due to the fact that Toppan Printing, Moore Canada, and Moore NA have engaged in "patent misuse." Item 111, ¶¶ 117–119.

In short, SRC's patent misuse claim is based on the allegation that Moore, Moore Canada, and Toppan Printing have conspired to prosecute Moore's competitors for patent violations regardless of whether the infringement claims have any basis in fact. *See, e.g.,* Item 111, ¶¶ 55–57, 66–69.

Moore argues that SRC simply cannot base a patent misuse claim on allegations that Moore has prosecuted its infringement action in bad faith. Here, Moore relies on 35 U.S.C. § 271(d)(3), which provides: "No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having ... (3) sought to enforce his patent rights against infringement or contributory infringement...." *Id.* SRC argues that section 271(d)(3) does not offer a safe harbor to Moore because section 271(d)(3) only protects patent owners that enforce their rights in the good faith belief that they can prevail on the merits. SRC goes on to argue that its patent misuse claim is not barred because SRC has alleged that Moore is enforcing its patent rights in bad faith. Here, SRC relies on a recent decision from the Federal Circuit in which the court stated: "A patent will not be rendered unenforceable for misuse if the patent owner has enforced the patent in the good faith belief that the accused products infringed the patent's claims." *C.R. Bard, Inc. v. M3 Systems,*

*Inc.,* 157 F.3d 1340, 1373 (Fed.Cir.1998). Based on this language, SRC infers that a patent *can* be rendered unenforceable if the patent owner enforces the patent *in bad faith.* Thus, SRC insists that its claim for patent misuse, which is based on allegations of bad faith enforcement, is not barred by section 271(b)(3).

However, the passage from *Bard* on which SRC relies is a quote from the trial court's jury charge, not the opinion of the Federal Circuit. Moreover, the Federal Circuit rejected the jury charge and described it as "[in]correct legal theory." *Bard,* 157 F.3d at 1373. "The conduct to which the jury instruction on misuse generally refers, that is, 'wrongful' enforcement of patents, is activity protected under *Noerr* and *California Motor,* and is not subject to collateral attack as a new ground of 'misuse.'" *Id.*

However, it appears that SRC can state a patent misuse claim to the extent that it alleges that Moore NA, Toppan Printing and Moore Canada have engaged in sham litigation. In other words, the same facts that could support a finding of sham litigation (and an antitrust violation) could also support a finding of patent misuse. "The bringing of a lawsuit to enforce legal rights does not of itself constitute ... patent misuse; there must be bad faith and improper purpose in bringing the suit ...." *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1558 (Fed.Cir.1995).

In light of the Federal Circuit's decision in *Glaverbel,* SRC's ninth counterclaim survives this motion to dismiss for the same reasons that SRC's antitrust counterclaims survived.

### III. Moore's Motion to Dismiss Newly Joined Parties

In addition to asserting ten new counterclaims in its amended answer, SRC

has named two new parties—Toppan Printing and Moore Canada—as counterclaim-defendants. The court will now address the issue of whether SRC has misjoined Toppan Printing and Moore Canada under Rule 21.

The Federal Rules of Civil Procedure do not define misjoinder, but the cases make clear that misjoinder of parties occurs when they fail to satisfy the conditions for permissive joinder under Fed.R.Civ.P.20(a). Therefore, parties are misjoined if the claims asserted against them "do not arise out of the same transaction or occurrence or do not present some common question of law or fact." The district court has broad discretion in ruling on a motion brought under Rule 21.

*Glendora v. Malone,* 917 F.Supp. 224, 227 (S.D.N.Y.1996) (citation omitted).

With respect to Toppan Printing, Moore asks the court to "put an end to SRC's misleading back door efforts to force Toppan Forms into this case." Item 117, p. 7. Moore insists that only Toppan Forms even arguably has a remote interest in this litigation—not Toppan Printing—and that SRC's attempt to name Toppan Printing "ignores the long-standing principle that recognizes the separate legal identities of corporations." *Id.*

The troubling point on Moore's arguments is that it has not been established that Toppan Printing is a separate corporation from Toppan Forms. In any event, this court would not be able to consider evidence on that issue in the context of this motion for dismissal under Rule 12(b)(6). *See Vertical Broadcasting, Inc. v. Town of Southampton,* 84 F.Supp.2d 379, 385 (E.D.N.Y.2000) (citation omitted).

Seizing on the court's freedom to consider "public records," SRC submits pages from Toppan Printing's web site as evidence of the fact that Toppan Forms is merely a *division* within Toppan Printing, not a separate corporate entity as Moore argues. Yet, pages from a web site are not public records for the purposes of Rule 12(b)(6). Rather, courts that consider matters of public record in a Rule 12(b)(6) motion are limited to things such as statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action. *See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192,1197 (3d Cir.1993); *Vertical Broadcasting,* 84 F.Supp.2d at 385; *Demick v. City of Joliet,* 108 F.Supp.2d 1022, 1025 (N.D.Ill.2000); *Modesto Irrigation Dist. v. Pacific Gas & Elec. Co.,* 61 F.Supp.2d 1058, 1066 (N.D.Cal.1999). Therefore, in the context of this Rule 12(b)(6) motion, the court will not consider these documents that were gathered from Toppan Printing's web site.

Nevertheless, the court finds that Toppan Printing and Moore Canada [7] have both been properly named as counterclaim defendants since SRC has asserted claims against all three counterclaim defendants that "arise out of the same transaction or occurrence [and] . . . present some common question of law or fact." *Glendora,* 917 F.Supp. at 227. More specifically, SRC has alleged that Moore NA, Toppan Printing, and Moore Canada violated sections 1 and 2 of the Sherman Act by agreeing to restrain trade unreasonably and maintain a monopoly in the pressure seal business forms market through various anti-competitive activities. *See supra.*

---

7. The court notes that Moore NA offers no substantive argument in support of its motion to dismiss Moore Canada for misjoinder.

**364**

Therefore, the court denies Moore's motion to dismiss Toppan Printing and Moore Canada on the basis of misjoinder under Rule 21.

## CONCLUSION

For the reasons stated herein, the court grants Moore's motion (Item 116) to dismiss counterclaims five, six, seven, and eight, and denies Moore's motion to dismiss counterclaims nine, ten, eleven, twelve, thirteen, and fourteen. As explained *supra*, though, the court dismisses counterclaims five, six, and eight without prejudice and with leave to amend in a manner that is consistent with this order. The court also denies Moore's motion to dismiss Toppan Printing and Moore Canada for misjoinder (Item 116). The court partly grants SRC's motion (Item 141) for leave to amend its answer as to counterclaims nine, ten, eleven, twelve, thirteen, and fourteen, and partly denies SRC's motion for leave to amend as to counterclaims five, six, seven, and eight. Again, as explained *supra*, the court dismisses counterclaims five, six, and eight without prejudice and with leave to amend in a manner that is consistent with this order. Finally, the court grants SRC's motion for leave to amend its answer so as to name the two new counterclaim-defendants, Toppan Printing and Moore Canada (Item 141).

So ordered.